UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JONATHAN SUMMERS,

                Plaintiff,

                                     Case No. 1:23-cv-1050

v.

                                     Hon. Hala Y. Jarbou

RUTH BROWN, et al.,

                Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order.

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915A(b) and 1915(e)(2), and 42 U.S.C. § 1997e(c). However, the Court's preliminary review of the complaint under the PLRA has brought to light Plaintiff's attempt to join unrelated parties into a single lawsuit. Under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. *See* Fed. R. Civ. P. 21. For the reasons set forth below, the Court will drop as misjoined all of the Oaks Correctional Facility (ECF) and Chippewa Correctional Facility (URF) Defendants, as well as Defendant Bishop. The Court will dismiss Plaintiff's claims against these Defendants without prejudice.

With regard to Plaintiff's claims against the Bellamy Creek Correctional Facility (IBC) Defendants, as well as Defendants Richard Russell and Larry Brown, under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous,

malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's federal claims for failure to state a claim against Defendants Parrish, Haddon, Garza-Martin, Aiken, Jane Doe #1, Barrett, S. Gregurek, Langdon, Ritter, Macauley, Robinson, Chauvez, Simpson, Yuki, Addis, Lewis, Page, Moyer, Proctor, Johnson, Walezak, Jones, Brokaw, Athearn, and Russell. The Court will dismiss any state law claims against those individuals without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.

The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Ruth Brown, Rowland, Gilbert, Larry Brown, John Doe #1, and John Doe #2: (1) Plaintiff's official capacity claims; and (2) Plaintiff's civil conspiracy claims. The following individual capacity claims remain in the case: (1) Plaintiff's First Amendment retaliation claims against Defendants Ruth Brown, John Doe #1, John Doe #2, Rowland, Gilbert, and Larry Brown; (2) Plaintiff's Eighth Amendment sexual abuse/harassment claims against Defendant Ruth Brown; (3) Plaintiff's Eighth Amendment failure to protect claims against Defendants John Does #1 and #2. Plaintiff's state law claims against Defendants Ruth Brown, John Doe #1, John Doe #2, Rowland, Gilbert, and Larry Brown also remain in the case.

## Discussion

### I.     Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at URF in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred

at that facility, IBC in Ionia, Ionia County, Michigan, and ECF in Manistee, Manistee County, Michigan. Plaintiff sues a total of 49 individuals, all in their official and personal capacities.

Plaintiff sues the following MDOC officials at IBC: Warden Matt Macauley; Assistant Deputy Wardens B. Haddon, Unknown Walezak, and Unknown Jones; Acting Deputy Warden R. Brokaw; Prisoner Counselors Lynn Parrish, C. Ritter, and Unknown Yuki; Housing Unit Officers John Doe #1 and John Doe #2; Grievance Coordinator M. Robinson; Lieutenants Unknown Chauvez and Unknown Rowland; Inspectors Unknown Gilbert and Unknown Moyer; Mailroom/General Office Assistant Brenda J. Simpson; Resident Unit Managers B. Addis and Unknown Johnson; Accounting Technician S. Lewis; Prison Facility Manager J. Page; General Office Assistant S. Proctor; Security Classification Committee (SCC) member J. Athearn; and Corrections Officers Ruth Brown and Unknown Garza-Martin. Plaintiff also sues the following healthcare personnel at IBC: Registered Nurse and Clinical Administrative Assistant Sabrina Aiken; Psychologist Jane Doe #1; Mental Health Director Michael Barrett; Registered Nurse S. Gregurek; and Health Unit Manager J. Langdon.

Plaintiff sues the following ECF officials: Warden M. Burgess, Acting Assistant Deputy Warden and SCC member J. Erway, Grievance Coordinator T. Bassett, Classification Director John Doe #3, Administrative Assistant S. O'Brien, Sergeants Unknown Bearup and Unknown Ward, Hearings Officer Unknown Goodspeed, Inspector Unknown Thomas, Prisoner Counselor Unknown Bennett, Acting Resident Unit Manager and SCC member T. McColl, and Mailroom Worker A. Anderson.

Plaintiff sues the following URF officials: Warden James Corrigan, Inspector Unknown Pawley, Mailroom Clerk Jane Doe #4, and Corrections Officers Unknown Miller and John Doe #4.

Plaintiff also sues the following individuals located in Lansing, Michigan: Larry Brown, identified as the MDOC Central Office Coordinator; Richard D. Russell, the Manager of the MDOC's Grievance Section; and Mark Bishop, identified as a Safety/Security Officer and Attorney Liaison in the Department of Civil Rights.

Plaintiff alleges that during the relevant time, Defendant Ruth Brown was an officer assigned to the protection unit at IBC. (ECF No. 1, PageID.11.) Plaintiff contends that Defendant Ruth Brown sexually harassed and threatened him. (*Id.*) According to Plaintiff, Defendant Ruth Brown would watch the male prisoners shower and would make "lurid comments about the size of each prisoner's penis and shout out her observations to the rest of the prisoners within earshot." (*Id.*) Plaintiff references a specific incident on February 12, 2020, during which Defendant Ruth Brown "threatened, berated[,] and sexually degraded Plaintiff when she shouted throughout the shower area that she would set up Plaintiff with a knife if Plaintiff did not shut his fa**** mouth." (*Id.* (asterisks added).) Defendant Ruth Brown then said to Plaintiff, "Let me see that little fa**** d*** of yours." (*Id.* (asterisks added).) Plaintiff filed a Prison Rape Elimination Act (PREA) complaint about these incidents. (*Id.*)

Two days later, on February 14, 2020, Defendant Ruth Brown "relentlessly continued her sexual harassment against Plaintiff." (*Id.*) Plaintiff alleges that she came to his cell door, left, and then returned. (*Id.*) Plaintiff wrote a grievance, but the grievance "mysteriously disappeared from the housing unit mailbox." (*Id.*)

On February 16, 2020, Plaintiff wrote another grievance against Defendant Ruth Brown for "unlocking the housing unit mailbox and retrieving several pieces of mail." (*Id.*, PageID.12.) Plaintiff claims that one of the pieces of mail was a grievance he submitted against Defendant Ruth Brown. (*Id.*) According to Plaintiff, Defendant Ruth Brown "revealed the contents of the grievance

to those present in the dining hall." (*Id.*) In response to Plaintiff's grievance, Defendants Parrish

and Haddon "both lied to protect [Defendant Ruth] Brown by stating that [Defendant Ruth] Brown

never removed anything from the housing unit mailbox." (*Id.*)

Plaintiff claims that his PREA complaint was "found to be lacking sufficient evidence."

(*Id.*) He asserts that the camera footage was never reviewed and that a proper investigation was

not conducted. (*Id.*)

On February 24, 2020, Plaintiff submitted a grievance against Defendants John Does #1

and #2 "for retaliation for failure to protect when [they] intentionally and deliberately instructed

another prisoner to enter the cell occupied by Plaintiff and his cellmate during formal count." (*Id.*)

Plaintiff claims that after the prisoner came into his cell, those officers closed and locked the door.

(*Id.*) The inmate began to assault Plaintiff and his cellmate. (*Id.*) According to Plaintiff, the inmate

was a former corrections officer and indicated that he was sent to Plaintiff's cell "in retaliation in

response to Plaintiff's grievances against one of their co-workers; namely, [Defendant Ruth]

Brown." (*Id.*, PageID.13.) When interviewed, the inmate "was threatened and coerced into denying

what had transpired" by Defendants Parrish and Haddon. (*Id.*) Plaintiff asked Defendant Garza-

Martin for medical assistance for the injuries Plaintiff sustained to his jaw and face. (*Id.*) Plaintiff's

requests were ignored. (*Id.*)

On March 16, 2020, Plaintiff submitted a grievance against the Prisoner Health Services

after "submitting no less than three (3) separate requests for medical assistance." (*Id.*) When

Plaintiff was finally seen by a nurse, he was told that he would be scheduled for X-rays, but he

was never called out. (*Id.*) On March 17, 2020, Defendants Gregurek and Langdon "both

concluded that there was no documentation that Plaintiff suffered any injuries." (*Id.*, PageID.14.)

On April 4, 2020, Defendant Aiken "reiterated that there was no documentation that Plaintiff

suffered any injuries, nor that Plaintiff submitted any 'kites' to be seen by Health Care and Mental Health Care personnel." (*Id.*)

Plaintiff claims that after the assault, he was experiencing paranoia, sleep deprivation, nightmares, and hallucinations. (*Id.*) Plaintiff was seen only after he filed a grievance against mental health. (*Id.*) According to Plaintiff, Defendant Jane Doe #1 retaliated against him by "[lying] on her case notes about what Plaintiff had told her; the result of which Plaintiff was told that he did not meet the criteria for Outpatient Treatment." (*Id.*) Plaintiff states that Defendant Barrett subsequently performed a mental health evaluation on April 13, 2020. (*Id.*)

On March 22, 2020, Plaintiff filed another PREA complaint against Defendant Ruth Brown after she called Plaintiff a "b****-ass-n*****-fa*." (*Id.* (asterisks added).) Defendant Ruth Brown then flipped her middle finger toward Plaintiff while his back was turned. (*Id.*) Plaintiff states that this all took place when he was exiting the dining hall, and that Defendant Ruth Brown should not have even been assigned to his housing unit "during the pendency of the original ongoing PREA investigation." (*Id.*) Defendant Ritter determined that Plaintiff's PREA complaint was unfounded. (*Id.*, PageID.14–15.) According to Plaintiff, Defendant Ritter was not certified by the MDOC to handle PREA investigations. (*Id.*, PageID.15.)

On April 29, 2020, Defendant Macauley informed Plaintiff that Defendants Robinson and Chauvez were investigating the PREA complaint. (*Id.*) Plaintiff claims that Defendant Robinson had a history of not forwarding grievance responses to Plaintiff, and that he was ultimately fired because he brought drugs and contraband into the facility. (*Id.*) Plaintiff claims that Defendant Robinson thwarted due process by interfering with Plaintiff's grievance process. (*Id.*)

On June 8, 2020, Plaintiff received a letter from Defendant Macauley indicating that Plaintiff's PREA complaint was upheld, and that Defendant Brown had been disciplined. (*Id.*)

Three days later, however, the same complaint was denied by Defendant Ritter. (*Id.*) On June 25, 2020, Plaintiff sent a letter to Defendant Macauley, contesting the conflicting decisions. (*Id.*) Plaintiff never received a reply. (*Id.*) Plaintiff filed a grievance against Defendant Macauley, which was rejected. (*Id.*) Plaintiff appealed to Step II, and Defendant Macauley "ignored well-settled policy and responded to the grievance written against him by denying any relief whatsoever." (*Id.*, PageID.15–16.) Plaintiff appealed to Step III, but never received a response.

Plaintiff then skips forward to events that occurred in 2022. He alleges that on March 17, 2022, he filed a grievance contesting his designation as a Security Threat Group (STG) member. (*Id.*, PageID.16.) Plaintiff tried to resolve the matter by writing to the grievance coordinator in Lansing, but the MDOC refused to remove the designation. (*Id.*) Plaintiff contends that staff manipulated and falsified information "in order to keep Plaintiff on STG status." (*Id.*) Plaintiff notes that STG status involves "restrictions on movement, activities[,] and other privileges that general population prisoners enjoy on a daily basis." (*Id.*)

Defendant Rowland reportedly spoke to Defendant Larry Brown about the STG issue, and Defendant Larry Brown told Defendant Rowland that "Plaintiff would be removed from STG status two-weeks from December" 2021. (*Id.*) After three months and numerous kites, Plaintiff submitted his grievance. (*Id.*) Plaintiff claims that Defendants Gilbert and Larry Brown then retaliated against him. (*Id.*) He alleges that the "retaliation was in the form of a Class II Misconduct and being told that Plaintiff would remain on STG status for reasons unrelated to STG Policy." (*Id.*) Defendant Larry Brown "lied and said the Plaintiff was still active in gang related activities." (*Id.*) According to Plaintiff, Defendant Gilbert "failed to ensure that his subordinates were performing their jobs to fully investigate the PREA [c]omplaint." (*Id.*)

On May 15, 2022, Plaintiff submitted a grievance against Defendant Simpson "for manipulating the mail policy and retaliation." (*Id.*, PageID.17.) According to Plaintiff, Defendants Simpson, Lewis, Page, Moyer, Proctor, and Johnson were involved in the confiscation and destruction of a book sent to Plaintiff from Amazon. (*Id.*) In the grievance response, the mailroom "claimed to not have the information regarding the book's sender." (*Id.*) Plaintiff contends that this was "ongoing retaliation for the grievances Plaintiff had filed against MDOC employees at [IBC]." (*Id.*) He also avers that Defendant Moyer "failed to ensure that his subordinates were performing their jobs to fully investigate the PREA [c]omplaint." (*Id.*)

On June 7, 2022, Plaintiff filed a grievance against Defendant Yuki for "purposely discarding the documents Plaintiff was attempting to copy for the grievance against the Mailroom." (*Id.*, PageID.17–18.) According to Plaintiff, camera footage would show Defendant Yuki "thumb[ing] through the documents before leaving Plaintiff's cell door." (*Id.*) Plaintiff claims this was "a continuing and concerted effort on behalf of [Defendant] Yuki and IBC [s]taff to further retaliate against Plaintiff" and to deter Plaintiff from exhausting his administrative remedies. (*Id.*, PageID.18.)

Also on June 7, 2022, Plaintiff filed a grievance against the SCC at IBC for removing Plaintiff from "Unit 2 Protection Housing for an alleged smuggling misconduct." (*Id.*) Plaintiff claims that the SCC consisted of Defendants Walezak, Jones, Brokaw, and Athearn. (*Id.*) Defendant Russell "ignored all of Plaintiff's pleas for help and protection, and instead, dutifully followed the party line." (*Id.*) Plaintiff claims this was "clear retaliation." (*Id.*) He references that "MDOC Employees knew by and through the review of Plaintiff's file that Plaintiff still required protection. Plaintiff's life was undoubtedly in jeopardy from a Statewide gang-hit on Plaintiff's life." (*Id.*) Plaintiff filed a formal PREA complaint "in the MDOC Grandview Plaza Building."

8

(*Id.*) He claims that "[s]aid Defendant received the PREA [c]omplaint" and "did absolutely nothing about it." (*Id.*)

On July 5, 2022, Plaintiff filed another grievance, this one "as a continuation to fight against Plaintiff's forced placement into the prison general population's Start Now Program." (*Id.*) Plaintiff requested protection again, but "the administration refused to acknowledge or even investigate Plaintiff's request." (*Id.*, PageID.18–19.)

On August 12, 2022, Plaintiff was transferred to ECF on an emergency ride-out. (*Id.*, PageID.19.) Plaintiff claims that an emergency ride-out is a "prime opportunity" for officers to "scour through a prisoner's property" because the property remains at the "sending prison facility to be packed up by Corrections Officers at their convenience." (*Id.*) According to Plaintiff, an emergency ride-out is called "diesel therapy" and is "used to punish and/or retaliation against prisoners who the Administration considers a problem." (*Id.*)

On October 13, 2022, Plaintiff filed a grievance against the ECF grievance coordinator for "retaliation and refusal to adhere to MDOC Policy and Procedure." (*Id.*) Plaintiff submitted another grievance against the ECF Classification Director for "retaliation and manipulation of the MDOC Grievance Policy and Procedure." (*Id.*) Plaintiff's grievance was rejected by Defendant Bassett "for allegedly grieving policy content." (*Id.*)

On October 25, 2022, Plaintiff filed grievances against Defendants Erway and Bassett "for retaliation." (*Id.*, PageID.20.) He filed a grievance against Defendant O'Brien "for retaliation" on November 3, 2022. (*Id.*)

Plaintiff then skips forward to April 29, 2023, when he was issued a Class I misconduct for possession of a weapon and assault and battery. (*Id.*) The misconduct was written by Defendant Ward and reviewed by Defendant Bearup. (*Id.*) Defendant Ward noted that Plaintiff "has sent

several kites about a possible gang-hit being orchestrated by the [Gangster Disciples (GDs)]." (*Id.*) That same day, Defendant Ward rewrote the misconduct to eliminate that information. (*Id.*)

Plaintiff was ultimately found guilty of the misconduct after an Administrative Law Judge concluded that "Plaintiff had an intention of inflicting harm upon the other prisoner." (*Id.*) Plaintiff claims that he "was only protecting himself from a gang related 'hit' on [him]" by the GDs. (*Id.*) Plaintiff further claims he was "only attempting to thwart an attack that would not have even happened had the Administration not removed Plaintiff from Protective Custody in the first place." (*Id.*) He states that those responsible for Plaintiff's ongoing danger of being assaulted are Defendants Thomas, Bennett, McColl, Anderson, Burgess, and Bishop. (*Id.*, PageID.21.) Plaintiff also faults Defendant Thomas for failing to make sure that his "subordinates were performing their jobs to fully investigate the PREA [c]omplaint." (*Id.*)

On May 1, 2023, Defendant Goodspeed came to Plaintiff's cell and told Plaintiff that "he had friends throughout the MDOC and guaranteed Plaintiff that he would be transferred to the worst facilities in the system if he continued to pursue the grievance process." (*Id.*) Plaintiff claims that URF is one such facility, and that the worst facilities are "known for overkill when disciplining prisoners." (*Id.*, PageID.22.)

The next day, Plaintiff received a memorandum from Defendant Goodspeed, stating, "Mr. Summers your kite was received by my office on 5-2-23 pertaining to the situation you are currently in segregation for. As I advised you on 5-1-23, I don't think it would be wise of you to attempt to fight this misconduct. Plead guilty, don't go to court." (*Id.*) On May 8, 2023, Plaintiff was found guilty of possession a weapon and threatening behavior and was sanctioned with 20 days of detention and 60 days of loss of privileges (LOP). (*Id.*)

On May 8, 10, and 11, 2023, Plaintiff "requested the appeals package to fight the Class I misconduct." (*Id.*) On May 12, 2023, Plaintiff filed a grievance against Defendant Goodspeed for "withholding the hearings packet in an attempt to keep Plaintiff from filing his Class I Misconduct Appeal." (*Id.*, PageID.22–23.)

On June 5, 2023, Plaintiff submitted a grievance "for retaliation by being placed on a 30-day phone restriction" without a hearing. (*Id.*, PageID.23.) He was placed on grievance restriction around that same time. (*Id.*)

On June 8, 2023, Plaintiff was transferred to URF on an emergency ride-out. (*Id.*) On June 24, 2023, Defendant Miller searched Plaintiff's cell and "confiscated Plaintiff's papers regarding grievances Plaintiff had planned to file about specific issues involving Round Housing Unit in general." (*Id.*, PageID.24.)

The next day, Defendant Miller called Plaintiff to the officers' station and told him that if "decided to be on 'f***-f***-sh**' and play games with the grievance system," the housing unit officers would "play games with Plaintiff via outright continuing and unrelentless retaliation." (*Id.* (asterisks added).) Later that day, Plaintiff was again called to the officers' station, where Defendant John Doe #4 reviewed Plaintiff on two Class III misconducts for excessive noise. (*Id.*) Plaintiff claims that these misconducts were issued for "a date that Plaintiff was not even at the URF-East prison facility." (*Id.*) Plaintiff was ultimately found not guilty of the misconducts. (*Id.*) Plaintiff claims that he could not provide the misconducts and not guilty finding with the instant complaint because Defendant Miller conducted a shakedown of his cell, and the misconducts, not guilty finding, and "other legal material concerning this instant 1983 [c]omplaint came up missing." (*Id.*)

Plaintiff alleges further that on July 18, 2023, Defendants Pawley and Jane Doe #4 disregarded MDOC protocol and opened "outgoing United States Mail that Plaintiff had signed a disbursement for postage, and proceeded to write a Class I Misconduct for threatening behavior against another prisoner that was not even at the prison facility where Plaintiff currently resides." (*Id.*, PageID.25.) According to Plaintiff, Defendant Jane Doe #4 advised Defendant Pawley that the envelope in question contained contraband or involved illegal activities. (*Id.*) Plaintiff claims that "[t]o this very day, [he] has yet to receive a notice of intent and notice of hearing" regarding the piece of mail that was opened. (*Id.*) Plaintiff faults Defendant Pawley for failing to make sure that "his subordinates were performing their jobs to fully investigate the PREA [c]omplaint." (*Id.*)

Based upon the foregoing, the Court construes Plaintiff's complaint to assert: (1) First Amendment retaliation claims; (2) First Amendment interference with mail claims; (3) First Amendment access to the courts claims; (4) Eighth Amendment sexual abuse claims; (5) Eighth Amendment failure to protect claims; (6) Eighth Amendment claims premised upon a failure to provide adequate medical care; (7) Eighth Amendment claims premised upon the failure to remove Plaintiff's STG designation; and (8) Fourteenth Amendment procedural due process claims premised upon the issuance of allegedly false misconducts and Plaintiff's continued STG designation. The Court also construes Plaintiff's complaint to assert constitutional claims related to the handling of his grievances and PREA complaints, civil conspiracy claims, and claims regarding violations of MDOC policies and procedures. Plaintiff seeks declaratory relief, as well as compensatory, punitive, and nominal damages. (*Id.*, PageID.39–42.)

## II.    Misjoinder

Plaintiff brings this action against 49 individual Defendants from three separate MDOC facilities, as well as from the MDOC Central Office in Lansing. Under Rule 21 of the Federal Rules of Civil Procedure, the Court may at any time, with or without motion, add or drop a party

12

for misjoinder or nonjoinder. *See* Fed. R. Civ. P. 21. At this juncture and prior to reviewing the merits of Plaintiff's allegations, the Court reviews whether Plaintiff's claims are misjoined.

### A. Improper Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless *one* claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (emphasis added) (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting improper joinder of parties or claims in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004).

The Seventh Circuit has explained that a prisoner like Plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g). . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions— should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three-strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) (declining to allow "litigious prisoners to immunize frivolous lawsuits from the 'three strikes' barrier by the simple expedient of pleading unexhausted habeas claims as components of § 1983 suits"); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions. Courts are therefore obligated to reject misjoined complaints like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

The analysis of joinder must start somewhere. There must be a first defendant and claim to permit the Court to determine whether joinder is proper. The first event described in Plaintiff's complaint is the beginning of Plaintiff's sexual abuse and harassment by Defendant Ruth Brown. The way Plaintiff presents his factual allegations supports identifying Defendant Ruth Brown as the appropriate starting point for the joinder analysis. By accepting Plaintiff's own presentation of the facts, the Court is considering the issue of joinder as Plaintiff has presented it in his complaint.

Plaintiff's claims regarding the alleged sexual abuse and harassment by Defendant Ruth Brown also implicate the other IBC Defendants, as Plaintiff suggests that he was retaliated against at IBC in various ways because he filed grievances and PREA complaints against Defendant Ruth Brown. These claims also implicate MDOC Central Office employees Defendants Russell and Larry Brown because of their responses, or lack thereof, to Plaintiff's various complaints regarding events at IBC. Plaintiff, however, does not allege any facts suggesting that these claims implicate Defendant Bishop. Plaintiff's only mention of Defendant Bishop occurs when he vaguely states that Defendant Bishop is responsible for Plaintiff's ongoing danger of being assaulted at ECF. (ECF No. 1, PageID.21.)

Plaintiff alleges that he was transferred to ECF in 2022, and then was transferred to URF in 2023. However, no matter how liberally the Court construes Plaintiff's complaint, Plaintiff has not stated at least "one claim against each [remaining] defendant [that] is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (citations omitted). Instead, Plaintiff makes sweeping allegations suggesting that all named Defendants were involved in a conspiracy to violate Plaintiff's constitutional rights, suggesting that everything that occurred in a three-year span was retaliatory for the PREA complaint he filed against Defendant Ruth Brown. Plaintiff even seeks to hold certain individuals at ECF and URF liable for not ensuring that the PREA complaint was properly investigated, even though the PREA complaint was filed at IBC and would have been investigated by officials there.

Plaintiff cannot manufacture proper joinder out of conclusory allegations of conspiracy. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single

plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 565-66 (2007) (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003).

Here, Plaintiff's allegations of conspiracy are conclusory and speculative. His allegations, viewed in the light most favorable to him, describe at least three discrete sets of facts that occurred over a period of three years. Plaintiff has provided no factual allegations establishing a link between the IBC employees and the employees at ECF and URF. Rather, he relies solely on the fact that they work for the same entity—the MDOC. Moreover, the fact that Plaintiff suggests that everything that happened to him during this three-year period was in retaliation for PREA complaints he filed in 2020 does not automatically grant Plaintiff leave to join unrelated claims together. After all, in the prison context, any adverse incident experienced by a prisoner could be claimed to be retaliation; however, such incidents are not necessarily transactionally related. Plaintiff simply fails to state a plausible claim of conspiracy that would permit him to join his claims against all 49 Defendants in a single lawsuit. Therefore, his conclusory claim of conspiracy cannot provide a link that would render his claims against the ECF and URF Defendants, as well as Defendant Bishop, properly joined.

## B.    Remedy

Because the Court has concluded that Plaintiff has improperly joined to this action the ECF and URF Defendants, as well as Defendant Bishop, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time. . . .'" (*quoting Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989))); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. To Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

In this case, Plaintiff brings causes of action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The statute of limitations, however, is subject to tolling. The Sixth Circuit has recognized that, in prisoner civil rights actions, the statute of limitations is tolled for the period during which a plaintiff's available state administrative remedies were being exhausted. *See Brown v. Morgan*, 209 F.3d 595, 596–97 (6th Cir. 2000). As the Sixth Circuit stated in *Brown*:

> The Prison Litigation Reform Act amended 42 U.S.C. § 1997e to provide: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (1999). . . . This language unambiguously requires exhaustion as a mandatory threshold requirement in prison litigation. Prisoners are therefore prevented from bringing suit in federal court for the period of time required to exhaust "such administrative remedies as are available." For this reason, the statute of limitations which applied to Brown's civil rights action was tolled for the period during which his available state remedies were being exhausted.

*Id.* at 596 (citing *Harris v. Hegmann*, 198 F.3d, 157–59 (5th Cir. 1999) (per curiam);*Cooper v. Nielson*, 194 F.3d 1316, 1999 WL 719514 (9th Cir. 1999)). The Sixth Circuit noted that because it could not determine when the period of exhaustion expired, the appropriate remedy was to remand the case to the District Court to "consider and decide the period during which the statute of limitations was tolled and for such other proceedings as may be necessary." *Id.* at 597. Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

Here, Plaintiff alleges that Defendant Bishop and the ECF and URF Defendants engaged in conduct that began in 2022 and continued through 2023. Given these allegations, the complaint provides no indication that the statute of limitations has or will run on Plaintiff's claims against these individuals, and Plaintiff has provided no basis for this Court to conclude that he would suffer gratuitous harm if Plaintiff's claims against these Defendants are dismissed without prejudice.

Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendant Bishop, the ECF Defendants (Defendants Burgess, Erway, Bassett, John Doe #3, O'Brien, Bearup, Ward, Goodspeed, Thomas, Bennett, McColl, and Anderson), and the URF Defendants (Defendants Corrigan, Pawley, Jane Doe #4, Miller, and John Doe #4) from this suit, dismissing Plaintiff's claims against them without prejudice to the institution of new, separate lawsuits. *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs"); *Carney*, 2008 WL 485204, at *3 (same). If Plaintiff wishes to proceed with his claims against these individuals, he may do so by filing new civil actions on the form provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and either paying the required filing fee or applying in the manner required by law to proceed *in forma pauperis*. Plaintiff is cautioned that he must limit all future actions to defendants and claims that are transactionally related to one another, and that filing scattershot complaints full of misjoined claims may result in prompt dismissal upon preliminary review.

## III. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint

20

need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

The Court's dismissal of Plaintiff's claims against Defendant Bishop, as well as the ECF and URF Defendants, as misjoined leaves Plaintiff's claims against the IBC Defendants, as well

as Defendants Russell and Larry Brown. Plaintiff raises the following claims for relief against these individuals: (1) First Amendment retaliation claims; (2) First Amendment interference with mail claims; (3) First Amendment access to the courts claims; (4) Eighth Amendment sexual abuse claims; (5) Eighth Amendment failure to protect claims; (6) Eighth Amendment claims premised upon a failure to provide adequate medical care; (7) Eighth Amendment claims premised upon the failure to remove Plaintiff's STG designation; and (8) Fourteenth Amendment due process claims premised upon the issuance of allegedly false misconducts and Plaintiff's continued placement on STG status. The Court also construes Plaintiff's complaint to assert constitutional claims related to the handling of his grievances and PREA complaints, and claims regarding violations of MDOC policies and procedures.

### A.    Official Capacity Claims

As noted *supra*, Plaintiff sues the IBC Defendants and Defendants Russell and Brown in their official and personal capacities. Although an action against a defendant in his or her individual capacity intends to impose liability on the specified individual, an action against the same defendant in his or her official capacity intends to impose liability only on the entity that they represent. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v.*

*Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Plaintiff seeks declaratory relief, as well as damages. Official capacity defendants, however, are absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). The Court, therefore, will dismiss Plaintiff's damages claims against the IBC Defendants, as well as Defendants Russell and Brown, in their official capacities.

An official capacity action seeking injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). Importantly, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Here, Plaintiff is no longer confined at IBC. The Sixth Circuit has held that transfer to another correctional facility moots a prisoner's claims for declaratory and injunctive relief. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Underlying this rule is the premise that such

relief is appropriate only where a plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *id.*; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

Plaintiff is no longer confined at IBC and fails to allege facts that show that he would be subjected to further future conduct by the IBC Defendants. Likewise, while Defendants Russell and Larry Brown are employed at the MDOC's Central Office in Lansing, Plaintiff fails to allege any facts suggesting that they are engaged in any ongoing violations of federal law. Therefore, Plaintiff does not seek relief properly characterized as prospective. *See Ladd*, 971 F.3d at 581. Accordingly, the Court will dismiss Plaintiff's official capacity claims in their entirety.

### B.    Personal Capacity Claims

#### 1.    First Amendment Claims

##### a.    Retaliation

Plaintiff raises numerous First Amendment retaliation claims against Defendants Ruth Brown, John Doe #1, John Doe #2, Jane Doe #1, Rowland, Gilbert, Larry Brown, Simpson, Lewis, Page, Moyer, Proctor, Johnson, Yuki, Walezak, Jones, Brokaw, and Athearn. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least

in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff alleges that the various retaliatory acts occurred after he filed grievances and complaints regarding Defendant Ruth Brown and other staff members at IBC. He also suggests that he filed grievances concerning his continued placement on STG status. Plaintiff, therefore, has adequately alleged protected conduct for purposes of his retaliation claims. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). The Court considers Plaintiff's allegations regarding the second and third elements for each implicated Defendant below.

### (i)     Defendants Ruth Brown, John Doe #1, and John Doe #2

Plaintiff alleges that after he filed his grievances and PREA complaint, Defendant Ruth Brown continued to sexually harass him. (ECF No. 1, PageID.11.) He alleges further that Defendant Ruth Brown removed a grievance from the unit mailbox and revealed the contents to staff and inmates present in the dining hall. (*Id.*) Plaintiff also avers that the inmate who assaulted him on February 24, 2020, admitted that he was sent to Plaintiff's cell "in retaliation in response to Plaintiff's grievances" against Defendant Ruth Brown. (*Id.*) As noted above, Plaintiff alleges that Defendants John Does #1 and #2 locked the inmate in Plaintiff's cell so that he could assault Plaintiff and his cellmate. Taking these allegations in the light most favorable to Plaintiff, the Court concludes that Plaintiff's First Amendment retaliation claims against Defendants Ruth Brown, John Doe #1, and John Doe #2 may not be dismissed at screening.

        **(ii)**      **Remaining Defendants (Defendants Rowland, Gilbert, Larry Brown, Simpson, Lewis, Page, Moyer, Proctor, Johnson, Yuki, Walezak, Jones, Brokaw, and Athearn)**

Plaintiff contends that the above-listed individuals retaliated against him in various ways. Plaintiff suggests that Defendants Rowland, Gilbert, and Larry Brown retaliated against him by refusing to remove his STG designation. He avers that Defendants Simpson, Lewis, Page, Moyer, Proctor, and Johnson retaliated by confiscating a book sent to Plaintiff from Amazon. Plaintiff asserts that Defendant Yuki retaliated by discarding documents Plaintiff was attempting to copy for a grievance. Finally, he suggests that Defendants Walezak, Jones, Brokaw, and Athearn retaliated by removing him from protective custody.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. Appx 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Even assuming that Defendants Simpson, Lewis, Page, Moyer, Proctor, Johnson, Yuki, Walezak, Jones, Brokaw, and Athearn acted adversely, Plaintiff merely alleges the ultimate fact

of retaliation with respect to these individuals. Plaintiff has alleged no *facts* to support his speculative beliefs that these individuals took the actions noted above because of grievances and PREA complaints Plaintiff filed against Defendant Ruth Brown. Plaintiff's complaint does not even allege that these individuals were aware of the PREA complaint and grievances filed by Plaintiff. Notably, several of the events alleged by Plaintiff took place in 2022, well more than two years after Plaintiff filed his grievances and PREA complaint against Defendant Ruth Brown. Simply because one event precedes another does not automatically show retaliation. *See Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews"); *cf. Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004) (noting that "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive"). The Court, therefore, will dismiss Plaintiff's First Amendment retaliation claims against Defendants Simpson, Lewis, Page, Moyer, Proctor, Johnson, Yuki, Walezak, Jones, Brokaw, and Athearn.

Plaintiff also contends that Defendants Rowland, Gilbert, and Larry Brown kept him on STG status and issued a Class II misconduct because of Plaintiff's grievances and complaints. Both acts can be considered adverse action. *See Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007); *see also Hill*, 630 F.3d at 474 (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse").

Plaintiff appears to connect Defendants Rowland, Gilbert, and Larry Brown's adverse actions to both his grievances and PREA complaint against Defendant Ruth Brown, as well as his grievances about being kept on STG status. However, Plaintiff alleges no *facts* from which the Court could plausibly infer that Defendants Rowland, Gilbert, and Larry Brown took these actions

because of Plaintiff's grievances and PREA complaint concerning Defendant Ruth Brown. The actions alleged to have been taken by Defendants Rowland, Gilbert, and Larry Brown took place in 2022, well more than two years after Plaintiff filed his grievances and PREA complaint against Defendant Ruth Brown.

Plaintiff, however, does allege that after he filed his grievance concerning his continued placement on STG status, Defendants Rowland, Gilbert, and Larry Brown issued the Class II misconduct and told Plaintiff that he would be remaining on STG status "for reasons unrelated to STG Policy." (ECF No. 1, PageID.16.) Although Plaintiff has by no means proven a retaliatory motive, taking the facts alleged in the light most favorable to him, the Court concludes that Plaintiff's First Amendment retaliation claims against Defendants Rowland, Gilbert, and Larry Brown cannot be dismissed on screening.

### b. Interference with Mail

The Court has construed Plaintiff's complaint to assert a First Amendment claim regarding interference with incoming mail. Plaintiff alleges that on or around May 15, 2022, Defendants Simpson, Lewis, Page, Moyer, Proctor, and Johnson were involved in the confiscation and destruction of a book sent to Plaintiff from Amazon. (ECF No. 1, PageID.17.)

"A prisoner's right to receive mail is protected by the First Amendment." *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Mail is one medium of free speech, and the right to send and receive mail exists under the First Amendment." *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (citing *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 427 (1993)). A prisoner, however, retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections systems." *Martin v. Kelley,* 803 F.2d 236, 240 n.7 (6th Cir. 1986) (quoting *Pell*, 417 U.S. at 822); *see Turner v. Safley,* 482 U.S. 78 (1987).

28

Plaintiff's claim is vague, and he does not describe how each named Defendant was personally involved in the confiscation and destruction of the book. Further, "isolated instances of interference with prisoners' mail" may not rise to the level of a constitutional violation under the First Amendment. *See Johnson v. Wilkinson*, No. 98-3866, 2000 WL 1175519 (6th Cir. Aug. 11, 2000) ("This random and isolated interference with Johnson's mail did not violate his constitutional rights." (citation omitted)); *see also Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997) (holding that an "isolated incident, without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation" (citations omitted)); *Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003) (stating that "Okoro was only able to provide one specific incident where he allegedly did not receive the full contents of a letter from his wife," and concluding that "[s]uch a random and isolated incident is insufficient to establish a constitutional violation" (citation omitted)); *cf. Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010) (citing *Johnson* for the holding that "isolated interference" with prisoners' rights may not rise to the level of a First Amendment violation). Because Plaintiff alleges only that Defendants Simpson, Lewis, Page, Moyer, Proctor, and Johnson confiscated Plaintiff's incoming mail on one occasion, he fails to set forth an interference with mail claim that rises to the level of a First Amendment violation. Plaintiff's First Amendment interference with mail claim against Defendants Simpson, Lewis, Page, Moyer, Proctor, and Johnson will, therefore, be dismissed.

### c.      Access to the Courts

The Court has construed Plaintiff's complaint to assert a First Amendment access to the courts claim against Defendant Yuki premised upon his allegation that on June 7, 2022, Defendant Yuki "purposely discard[ed] the documents Plaintiff was attempting to copy for the grievance against the Mailroom." (ECF No. 1, PageID.17–18.) According to Plaintiff, camera footage would

show Defendant Yuki "thumb[ing] through the documents before leaving Plaintiff's cell door." (*Id.*) Plaintiff claims this was to deter Plaintiff from exhausting his administrative remedies. (*Id.*, PageID.18.)

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to

challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (discussing that *Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

Here, Plaintiff's complaint is devoid of any facts regarding an underlying cause of action. By referring to attempts to exhaust his administrative remedies, Plaintiff presumably refers to exhaustion of the claims he now raises in the instant civil rights suit. Plaintiff, however, fails to describe any lost remedy because of Defendant Yuki's actions. Notably, Plaintiff was able to file the instant lawsuit despite not having those copies. Accordingly, any intended First Amendment access to the courts claim against Defendant Yuki will be dismissed.

## 2. Eighth Amendment Claims

The Court has construed Plaintiff's complaint to assert that several of the named Defendants violated his Eighth Amendment rights in various ways. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of

decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Therefore, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate

32

health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### a.  Verbal Harassment and Sexual Abuse/Harassment

The Court has construed Plaintiff's complaint to assert Eighth Amendment claims premised upon verbal harassment, as well as sexual abuse and harassment, against Defendant Ruth Brown. Plaintiff alleges that Defendant Ruth Brown watched prisoners shower and would make "lurid comments about the size of each prisoner's penis and shout out her observations to the rest of the prisoners within earshot." (ECF No. 1, PageID.11) Plaintiff references an incident on February 12, 2020, during which Defendant Ruth Brown "threatened, berated[,] and sexually degraded Plaintiff when she shouted throughout the shower area that she would set up Plaintiff with a knife if Plaintiff did not shut his fa**** mouth." (*Id.* (asterisks added).) Defendant Ruth Brown then said to Plaintiff, "Let me see that little fa**** d*** of yours." (*Id.* (asterisks added).) Plaintiff also suggests that Defendant Ruth Brown called Plaintiff a "b****-ass-n*****-fa*" and flipped her middle finger at him. (*Id.*, PageID.14. (asterisks added).)

As an initial matter, while unprofessional, allegations of verbal harassment or threats by prison officials towards an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey*, 832 F.2d at 955. Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Id.* Plaintiff, however, alleges that Defendant Ruth Brown's verbal harassment and threats occurred as part of her campaign of sexual abuse and harassment. "[B]ecause the sexual harassment or abuse of an

inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (citations omitted).

"Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment[;] [t]his is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citations omitted); *Bishop v. Hackel*, 636 F.3d 757, 761 (6th Cir. 2011) (discussing inmate abuse); *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) (discussing abuse by guards). However, some courts have held that even minor, isolated incidents of sexual touching coupled with offensive sexual remarks do not rise to the level of an Eighth Amendment violation. *See, e.g.*, *Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320–21 (6th Cir. 2012) (finding that two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to the level of a constitutional violation); *Jackson v. Madery*, 158 F. App'x 656, 661 (6th Cir. 2005) (concluding that correctional officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (holding that male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (finding that, where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault).

34

In contrast, the Sixth Circuit has held that ongoing, coercive verbal harassment may rise to sexual abuse that violates the Eighth Amendment. *Rafferty*, 915 F.3d at 1095. The *Rafferty* court found an Eighth Amendment violation when a male prison official sexually harassed a female prisoner by repeatedly demanding that the prisoner expose herself and masturbate while the official watched and intimidated her into complying. *Id.* at 1096. The court noted that, in light of the coercive dynamic of the relationship between prison staff and prisoners, such demands amount to sexual abuse. *Id.*

Here, Plaintiff does not suggest that Defendant Ruth Brown ever physically touched him in any way. However, the Sixth Circuit has acknowledged "an incarcerated prisoner's right to bodily privacy, but has found that assigned positions of female guards that require only infrequent and casual observations, or observation at a distance, and that are reasonably related to prison needs are not so degrading as to warrant court interference." *Harris v. Caruso*, No. 2:06-cv-198, 2006 WL 2521403, at *8 (W.D. Mich. Aug. 30, 2006) (citing cases). On the other hand, the Sixth Circuit has "recognized that a prison policy forcing prisoners . . . to be exposed to regular surveillance by officers of the opposite sex while naked—for example while in the shower or using a toilet in a cell—would provide the basis of a claim on which relief could be granted." *Mills v. City of Barbourville,* 389 F.3d 568, 579 (6th Cir.2004) (citing *Kent v. Johnson,* 821 F.2d 1220, 1226 (6th Cir.1987); *Cornwell v. Dahlberg,* 963 F.2d 912, 917 (6th Cir.1992)).

Plaintiff's allegations suggest that Defendant Ruth Brown observed him and other inmates in the showers on more than one occasion. He also contends that she made repeated sexual comments to him. Although Plaintiff has by no means proven an Eighth Amendment violation, taking his allegations in the light most favorable to him, Plaintiff's Eighth Amendment claim

against Defendant Ruth Brown premised upon sexual abuse and harassment cannot be dismissed at screening.

### b.      Failure to Protect

Plaintiff alleges that on February 24, 2020, Defendants John Does #1 and #2 failed to protect him when they told another prisoner to enter Plaintiff's cell during formal count. (ECF No. 1, PageID.12.) After the inmate entered the cell, these individuals closed and locked the door, and the inmate began to assault Plaintiff and his cellmate. (*Id.*) Plaintiff also suggests that Defendants Walezak, Jones, Brokaw, and Athearn failed to protect him by removing him from protective custody despite a "Statewide gang-hit on Plaintiff's life." (*Id.*, PageID.18.)

In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison official acted with "deliberate indifference" to a substantial risk of serious harm facing the plaintiff. *Id.* at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 79 (6th Cir. 1995). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67.

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer*, 511 U.S. at 833. Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). In particular, because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (ellipses in original) (citations omitted). To establish a violation of this right, Plaintiff must show that each Defendant was deliberately indifferent to Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880–81 (6th Cir. 1988). While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242–43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety").

### (i)        February 24, 2020, Incident

Plaintiff's allegations regarding the February 24, 2020, incident permit the Court to infer that Defendants John Does #1 and #2 intentionally told the other inmate to enter Plaintiff's cell for the purpose of assaulting Plaintiff and his cellmate. Plaintiff contends that these Defendants locked the other inmate in the cell after instructing him to go in, and that the other inmate indicated that he was sent to retaliate against Plaintiff for Plaintiff's grievances and PREA complaints against Defendant Ruth Brown. (ECF No. 1, PageID.12.) Although Plaintiff has by no means proven deliberate indifference, taking his allegations in the light most favorable to him, his Eighth

Amendment failure to protect claim against Defendants John Does #1 and #2 may not be dismissed at screening.

### (ii)     Removal from Protective Custody

Nothing in Plaintiff's complaint, as pled, permits the Court to infer that Defendants Walezak, Jones, Brokaw, and Athearn were aware of and consciously disregarded an excessive risk to Plaintiff's safety by removing him from protective custody. *See Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67. Plaintiff only vaguely states that "MDOC Employees knew by and through the review of Plaintiff's file that Plaintiff still required protection. Plaintiff's life was undoubtedly in jeopardy from a Statewide gang-hit on Plaintiff's life." (ECF No. 1, PageID.18.) That is insufficient to state claims for relief against Defendants Walezak, Jones, Brokaw, and Athearn because a "[s]ummary reference to a single, [multi]-headed 'Defendants' does not support a reasonable inference that each Defendant is liable" for the events described in the amended complaint. *See Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011)) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))). Furthermore, nothing suggests that Plaintiff faced any actual risk after he was removed from protective custody. Plaintiff's allegations, at most, rise to the level of negligence, which is insufficient to demonstrate an Eighth Amendment violation. *See Farmer*, 511 U.S. at 837.

Consequently, Plaintiff's Eighth Amendment failure to protect claims against Defendants Walezak, Jones, Brokaw, and Athearn will be dismissed.

### c.      Failure to Provide Adequate Medical and Mental Health Care

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle*, 429 U.S. at 103–04. The Eighth Amendment requires prison officials to provide medically necessary mental health treatment as well. *See id.* at 103; *Government of the Virgin Islands v. Martinez*, 239 F.3d 293, 301 (3d Cir. 2001); *Lay v. Norris*, No. 88-5757, 1989 WL 62498, at *4 (6th Cir. June 13, 1989); *Potter v. Davis*, No. 82-5783, 1985 WL 13129, at * 2 (6th Cir. April 26, 1985). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle*, 429 U.S. at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with

39

knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has

received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### (i)     Medical Care

Plaintiff contends that after the assault by the other inmate, he asked Defendant Garza-Martin for medical assistance for injuries to his jaw and face but was ignored. (ECF No. 1, PageID.13.) On March 16, 2020, Plaintiff submitted a grievance against the Prisoner Health Services after "submitting no less than three (3) separate requests for medical assistance." (*Id.*) When Plaintiff was finally seen by a nurse, he was told that he would be scheduled for X-rays, but he was never called out. (*Id.*) On March 17, 2020, Defendants Gregurek and Langdon "both concluded that there was no documentation that Plaintiff suffered any injuries." (*Id.*, PageID.14.) On April 4, 2020, Defendant Aiken "reiterated that there was no documentation that Plaintiff

suffered any injuries, nor that Plaintiff submitted any 'kites' to be seen by Health Care and Mental Health Care personnel." (*Id.*)

Plaintiff's allegations are simply too conclusory to state Eighth Amendment claims for the denial of medical treatment against Defendants Garza-Martin, Gregurek, Langdon, and Aiken. Plaintiff does not set forth any facts regarding his injuries, only vaguely stating that he had injuries to his jaw and face. Presumably, Plaintiff suffered cuts and bruising after the fight with the other inmates. Even if Plaintiff suffered such injuries, minor injuries do not constitute serious medical needs. *See Lockett v. Suardini*, 526 F.3d 866, 876 (6th Cir. 2008) (concluding that minor lacerations, cuts, and soreness in two fingers did not constitute serious medical needs); *Blackmore*, 390 F.3d at 898 (citing cases involving minor injuries that did not support Eighth Amendment claims, including cuts and bruises resulting from a glass splinter that did not require stitches or painkillers); *Zentmyer v. Kendall Cnty., Ill.*, 220 F.3d 805, 810 (7th Cir. 2000) (reasoning that the failure to treat "the sorts of ailments [including scrapes and bruises] for which many people who are not in prison do not seek medical attention—does not . . . violate the Constitution").

Plaintiff also fails to allege facts regarding what he told these individuals about his condition and sets forth nothing from which the Court could infer that Defendants Garza-Martin, Gregurak, Langdon, and Aiken were deliberately indifferent to his needs. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679. There is nothing alleged in the complaint that might distinguish a deliberate indifference to Plaintiff's needs from simple negligence, which *Farmer* has held is not enough for an Eighth Amendment claim. *See Farmer*, 511 U.S. at 835 (holding that an Eighth Amendment violation requires a "state of mind more blameworthy than negligence"). Plaintiff's Eighth

42

Amendment claims regarding the denial of medical care against Defendants Garza-Martin, Gregurek, Langdon, and Aiken will, therefore, be dismissed.

### (ii)      Mental Health

Plaintiff also appears to fault Defendants Jane Doe #1 and Barrett for failing to provide adequate mental health care. Plaintiff vaguely alleges that Defendant Jane Doe #1 "lied on her case notes about what Plaintiff had told her; the result of which Plaintiff was told that he did not meet the criteria for Outpatient Treatment." (ECF No. 1, PageID.14.) He also indicates that Defendant Barrett performed a mental health evaluation on April 13, 2020. (*Id.*)

The vague facts alleged by Plaintiff in no way rise to the level of deliberate indifference to Plaintiff's mental health needs. Plaintiff's complaint makes clear that Defendants Barrett and Jane Doe #1 both evaluated him. Plaintiff's claims boil down to disagreements with Defendants Barrett and Jane Doe #1 about their approach to Plaintiff's mental health needs, which is insufficient to set forth Eighth Amendment claims. *See White v. Corr. Med. Servs.*, 94 F. App'x 262, 264 (6th Cir. 2004); *see also Mitchell*, 553 F. App'x at 605 ("[A] desire for additional or different treatment does not suffice by itself to support an Eighth Amendment claim." (citations omitted)). Nothing in Plaintiff's complaint suggests that Defendants Barrett and Jane Doe #1 failed to provide any treatment at all for Plaintiff's mental health needs. The Court, therefore, will dismiss Plaintiff's Eighth Amendment claims against Defendants Barrett and Jane Doe #1.

### d.      STG Status

The Court has construed Plaintiff's complaint to assert an Eighth Amendment claim against Defendants Rowland, Gilbert, and Larry Brown for keeping Plaintiff on STG status. (ECF No. 1, PageID.16.) Plaintiff also suggests that Defendant Walezak was involved in this decision. (*Id.*, PageID.31.)

43

The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

While it is clear that Plaintiff was denied certain privileges because he was classified as an STG member, he fails to allege that he was denied any basic human needs or requirements because of that classification. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Moreover, Plaintiff cannot bring an Eighth Amendment claim for emotional or mental damages because he does not allege a physical injury. *See* 42 U. S.C. § 1997e(e); *see also Hudson*, 503 U.S. at 5; *Harden-Bey*, 524 F.3d at 795. Accordingly, the Court will dismiss any Eighth Amendment claims against Defendants Rowland, Gilbert, and Larry Brown premised upon keeping Plaintiff on STG status.

### 3.    Fourteenth Amendment Due Process Claims

#### a.    STG Designation

The Court has construed Plaintiff's complaint to assert a Fourteenth Amendment due process claim against Defendants Rowland, Gilbert, and Larry Brown for keeping Plaintiff on STG status. (ECF No. 1, PageID.16.) Plaintiff also suggests that Defendant Walezak was involved in this decision. (*Id.*, PageID.31.)

44

An STG is defined under MDOC Policy as "a group of prisoners designated by the Director as possessing common characteristics which distinguish them from other prisoners or groups of prisoners and which, as a discrete entity, poses a threat to staff or other prisoners or to the custody and security of the facility." MDOC Policy Directive 04.04.113 ¶ B (eff. Dec. 20, 2021). The policy provides for a manager of the emergency management section (EMS). *Id.* ¶ H. In addition, the warden of each facility appoints a local STG coordinator for the institution. *Id.* ¶ I. A prisoner may be designated an STG I by the local STG Coordinator if there is sufficient documentation of the prisoner's membership in the STG and the prisoner fails to make a credible renunciation of his membership. *Id.* ¶¶ S–V. The EMS manager makes the final determination on designating a prisoner as an STG member. *Id.* ¶ T. A prisoner may be designated an "STG II" member if: (1) he is an STG I member and is found guilty of major misconduct related to his STG activity, (2) was previously an STG I member, and currently presents a threat to prisoners or staff, or (3) is identified as a leader enforcer or recruiter in an STG. *Id.* ¶ W.

A prisoner designated as an STG I member must be housed in security level II or higher. STG I prisoners are subject to the following restrictions: prisoners are generally limited to three visits per month; classification to a school or work assignment only as approved by the EMS manager; no attendance at group meetings of prisoners, except for approved religious services; no participation in group leisure time activities, except for yard; and cell search at least once a week. *Id.* ¶ BB. A prisoner designated as an STG II member shall be housed in security level V or higher. *Id.* ¶ CC. STG II members are also subject to the following restrictions: prisoners are generally limited to two non-contact visits per month; classification to a school or work assignment only as approved by the EMS manager; no attendance at group meetings of prisoners, except for approved religious services; no participation in group leisure time activities, except for yard; cell search at

least twice a week; and out-of-cell movement not to exceed one hour per day, excluding showers, meals, work, etc. *Id.*

In order to prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by government action. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). Prisoners retain a liberty interest with respect to state-imposed prison discipline that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Here, Plaintiff fails to state a violation of his due process rights. Plaintiff does not have a protected liberty interest in the procedures affecting his classification and security because the resulting restraint does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486. Moreover, the Supreme Court has repeatedly held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim*, 461 U.S. at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 244 (1976). Relying on *Sandin*, the Sixth Circuit has held that a Michigan prisoner can no longer claim a liberty interest in his security classification. *See Harbin-Bey v. Rutter,* 420 F.3d 571, 577 (6th Cir. 2005); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995); *accord Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997). Plaintiff's designation as a STG member is nothing more than a security classification used by the prison. *Harbin Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005). Because Plaintiff does not have a constitutional right to a particular security level or classification, he fails to state a due process claim.

###### b.        False Misconducts

In his complaint, Plaintiff references receiving a Class II misconduct, as well as a smuggling misconduct. (ECF No. 1, PageID.16, 18.) Plaintiff appears to suggest that these misconducts were fabricated. The Court, therefore, has construed his complaint to assert Fourteenth Amendment due process claims premised upon the receipt of allegedly false misconduct tickets.

A prisoner's ability to challenge a prison misconduct conviction depends on whether the conviction implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. at 484, 487. Under MDOC Policy Directive 03.03.105, ¶ C (eff. Apr. 18, 2022), a class I misconduct is a "major" misconduct and class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a class I misconduct. *Id*. ¶ DDDD. Plaintiff does not indicate the nature of the Class II misconduct. Smuggling is a Class I misconduct. *See id.*, Attach A.

Plaintiff does not indicate whether he was even found guilty of these misconducts. However, with respect to the Class II misconduct, the Sixth Circuit has routinely held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g.*, *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999).

47

Moreover, Plaintiff does not allege that the Class I misconduct had any effect on the duration of his sentence—and he cannot. Plaintiff is serving sentences imposed in 2003 and 2018 for crimes committed in 2003 and 2017. *See* MDOC Offender Tracking Information System, https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=459083 (last accessed Oct. 18, 2023). A prisoner like Plaintiff, who is serving indeterminate sentences for offenses committed after 2000, can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantange*, 418 F. App'x 408, 412 (6th Cir. 2011). Therefore, any Class I misconduct conviction for smuggling had no impact on the duration of Plaintiff's sentence.

Furthermore, Plaintiff does not allege any facts suggesting that the misconduct conviction resulted in an "atypical and significant hardship." *See Sandin*, 515 U.S. at 487. Plaintiff fails to allege any facts whatsoever regarding what sanctions, if any, he received as a result of the misconduct. For these reasons, Plaintiff fails to state Fourteenth Amendment procedural due process claims based upon the alleged false misconducts.[1]

---

[1] To the extent Plaintiff intended to raise substantive due process claims regarding the alleged false misconducts, he fails to state such a claim. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)). With respect to an allegedly falsified misconduct report, the Sixth Circuit has held

### 4.      Claims Regarding Handling of Grievances

Plaintiff faults several of the IBC Defendants, as well as Defendant Russell, for failing to adequately handle and respond to his grievances and grievance appeals. Plaintiff, however, has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907,

---

that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999). Plaintiff's complaint, however, is devoid of any allegations from which the Court could infer that any of the named Defendants acted to frame Plaintiff. Moreover, Plaintiff's allegations fall short of demonstrating the sort of egregious conduct that would support a substantive due process claim.

Further, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the First Amendment, as well as the Fourteenth Amendment's procedural due process clause, apply to protect Plaintiff's liberty interest in the misconduct proceedings. Consequently, any intended substantive due process claims will be dismissed.

at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive Plaintiff of due process.

Moreover, Plaintiff's First Amendment right to petition the government was not violated by Defendants' rejection of Plaintiff's grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Finally, Defendants' actions (or inactions) have not barred Plaintiff from seeking a remedy for his complaints. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were

improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001). In light of the foregoing, the Court finds that Plaintiff has failed to state a cognizable claim against Defendants based on their rejection of Plaintiff's grievances.

### 5.    Claims Regarding Handling of PREA Complaints

Plaintiff faults several of the IBC Defendants for failing to adequately investigate and handle his PREA complaints regarding Defendant Ruth Brown, and that Defendant Ruth Brown violated the PREA by sexually harassing and abusing Plaintiff. Plaintiff, however, "has no independent cause of action for any [individual's] failure to comply with the [PREA]." *Beeman v. Heyns*, No. 1:16-cv-27, 2016 WL 1316771, at *12 n.4 (W.D. Mich. Apr. 5, 2016) ("Although not addressed in the Sixth Circuit, district courts have found that the PREA does not create a private cause of action which can be brought by an individual plaintiff." (quoting *Montgomery v. Harper*, No. 5:14-cv-P38R, 2014 WL 4104163, at *2 (W.D. Ky. Aug. 19, 2014))); *see also McCloud v. Prack*, 55 F. Supp. 3d 478, 482 n.2 (W.D.N.Y. 2014) ("[N]othing in the statute suggests that PREA intended to establish a private cause of action for allegations of prison rape, and every court to address the issue has determined that PREA cannot support such a cause of action by an inmate." (quoting *Amaker v. Fischer*, No. 10-cv-977, 2014 WL 4772202, at *14 (W.D.N.Y. Sept. 24, 2014))); *Barhite v. Berghuis*, No. 1:14-cv-670, 2014 WL 4627166, at *5 (W.D. Mich. Sept. 15, 2014) ("Plaintiff's request is predicated on the assumption that the PREA provides him a cause of action for Defendants' alleged sexual assaults. It does not."). Plaintiff's claims pursuant to the PREA will, therefore, be dismissed.

### 6.      Civil Conspiracy Claims

The Court has also construed Plaintiff's complaint to assert civil conspiracy claims against the IBC Defendants and Defendants Russell and Larry Brown.

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff provides no allegations regarding any agreement among any of these individuals, other than the fact that the majority of them are employed at IBC and all of them are employed by the MDOC. Plaintiff's allegations of conspiracy are wholly conclusory. He alleges no *facts* that indicate the existence of a plan, much less that any Defendant shared a conspiratorial objective. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed

. . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Accordingly, Plaintiff's

conspiracy claims under § 1983 will be dismissed.[2]

### C.    Claims Regarding Violations of MDOC Policy and Procedure

Throughout his complaint, Plaintiff alleges that the IBC Defendants, as well as Defendants

Russell and Larry Brown, violated several MDOC policies and procedures. Section 1983,

however, does not provide redress for violations of state law. *See Pyles v. Raisor*, 60 F.3d 1211,

1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). The only possible

way a policy might enjoy constitutional protection would be through the Fourteenth Amendment's

Due Process Clause.

To demonstrate a due process violation, a plaintiff must prove the following elements: (1) a

life, liberty, or property interest requiring protection under the Due Process Clause; and (2) a

deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438

F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no

federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519

---

[2] Plaintiff's conspiracy claims also would be barred by the intracorporate conspiracy doctrine. The intracorporate conspiracy doctrine states that "if all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Ed.*, 926 F.2d 505, 510 (6th Cir. 1991). Initially applied to claims under 42 U.S.C. § 1985(3), *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839–40 (6th Cir. 1994) (quoting *Hull*, 926 F.2d at 510), the Sixth Circuit has concluded that the intracorporate conspiracy doctrine applies to claims under § 1983 as well, *Jackson v. City of Cleveland*, 925 F.3d 793, 817–19 (6th Cir. 2019). As a result, unless members of the same collective entity (such as the MDOC) are acting outside the scope of their employment, they are deemed to be one collective entity and not capable of conspiring. *Id.* at 819; *see also Novak v. City of Parma*, 932 F.3d 421, 436–37 (6th Cir. 2019) (same). Here, Defendants are members of the same collective entity—the MDOC. Plaintiff does not even allege, much less show, that Defendants were acting outside the scope of their employment. To bring claims outside of the intracorporate conspiracy doctrine, a plaintiff must allege that the defendants "acted other than in the normal course of their corporate duties." *Johnson*, 40 F.3d at 840. Plaintiff's complaint is devoid of facts suggesting that Defendants were acting outside the normal course of their duties, however improperly he believes they may have been exercising those duties.

(6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts, however, have routinely recognized that a prisoner does not enjoy any federal protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164. Plaintiff's allegations that Defendants violated MDOC policy and procedures, therefore, fail to raise cognizable federal constitutional claims.

Plaintiff may be seeking to invoke this Court's supplemental jurisdiction over state law claims for violations of MDOC policy and procedure. Ordinarily, where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction, and the federal claims are dismissed prior to trial, the court will dismiss the remaining state law claims. *See Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Because Plaintiff's federal claims against Defendants Parrish, Haddon, Garza-Martin, Aiken, Jane Doe #1, Barrett, S. Gregurek, Langdon, Ritter, Macauley, Robinson, Chauvez, Simpson, Yuki, Addis, Lewis, Page, Moyer, Proctor, Johnson, Walezak, Jones, Brokaw, Athearn, and Russell have been dismissed, the Court will dismiss Plaintiff's state claims against these individuals without prejudice. Because Plaintiff continues to have pending federal claims against Defendants Ruth Brown, John Doe #1, John Doe #2, Rowland, Gilbert, and Larry Brown, the Court will exercise supplemental jurisdiction over Plaintiff's state law claims against them.

## Conclusion

The Court has reviewed Plaintiff's complaint under the Federal Rules of Civil Procedure regarding the joinder of claims and parties. The Court concludes that the ECF and URF Defendants (Defendants Burgess, Erway, Bassett, John Doe #3, O'Brien, Bearup, Ward, Goodspeed, Thomas, Bennett, McColl, Anderson, Corrigan, Pawley, Jane Doe #4, Miller, and John Doe #4), as well as Defendant Bishop, are misjoined. The Court, therefore, will drop these Defendants as parties and dismiss Plaintiff's claims against them without prejudice.

Moreover, having conducted the review required by the PLRA with respect to the remaining Defendants and claims, the Court determines that Plaintiff's federal claims against Defendants Parrish, Haddon, Garza-Martin, Aiken, Jane Doe #1, Barrett, S. Gregurek, Langdon, Ritter, Macauley, Robinson, Chauvez, Simpson, Yuki, Addis, Lewis, Page, Moyer, Proctor, Johnson, Walezak, Jones, Brokaw, Athearn, and Russell will be dismissed for failure to state a claim. The Court will dismiss any state law claims against those individuals without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.

The Court will also dismiss, for failure to state a claim, the following claims against Defendants Ruth Brown, John Doe #1, John Doe #2, Rowland, Gilbert, and Larry Brown: (1) Plaintiff's official capacity claims; and (2) Plaintiff's civil conspiracy claims. The following

55

individual capacity claims remain in the case: (1) Plaintiff's First Amendment retaliation claims against Defendants Ruth Brown, John Doe #1, John Doe #2, Rowland, Gilbert, and Larry Brown; (2) Plaintiff's Eighth Amendment sexual abuse/harassment claims against Defendant Ruth Brown; (3) Plaintiff's Eighth Amendment failure to protect claims against Defendants John Does #1 and #2. Plaintiff's state law claims against Defendants Ruth Brown, John Doe #1, John Doe #2, Rowland, Gilbert, and Larry Brown also remain in the case.

An order consistent with this opinion will be entered.


Dated: November 16, 2023                          /s/ Hala Y. Jarbou
                                                  HALA Y. JARBOU
                                                  CHIEF UNITED STATES DISTRICT JUDGE